**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| ————————————————————x | |
| SHIRLEY T. BURTON, on behalf of plaintiff<br>and the class defined herein, | CASE NO.: 1:13-cv-1426-BMC |
| Plaintiffs, | |
| vs. | |
| NATIONS RECOVERY CENTER, INC.;<br>ATLANTIC CREDIT & FINANCE SPECIAL<br>FINANCE UNIT III, LLC | |
| Defendants. | |
| ————————————————————x | |

**MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR FINAL**
**APPROVAL OF CLASS SETTLEMENT AGREEMENT AND RELEASE**

Arthur Sanders, Esq. (AS-1210)
MEL S. HARRIS & ASSOCIATES, LLC
5 Hanover Square, 8th Floor
New York, N.Y. 10004
Telephone: (212) 660-1050
Facsimile: (646) 454-2104
E-Mail: asanders@melharrislaw.com

*Attorney for Defendant, Nations Recovery*
*Center, Inc*

William F. Horn, Esq. (WH-1070)
LAW OFFICE OF WILLIAM F. HORN
188-01B 71st Crescent
Fresh Meadows, NY 11365
Telephone: (718) 785-0543
Facsimile:  (866) 596-9003
E-Mail: bill@wfhlegal.com

Shimshon Wexler, Esq. (SW-0770)
THE LAW OFFICES OF SHIMSHON WEXLER,
P.C.
P.O. Box 250870
New York, NY 10025
Telephone: (212) 760-2400
Facsimile:  (917) 512-6132
E-Mail: shimshonwexler@yahooo.com

*Attorneys for Plaintiff, Shirley Burton, and*
*all others similarly situated*

# <u>TABLE OF CONTENTS</u>

**TABLE OF AUTHORITIES**....…………….....................…………………………………iii

I.   **INTRODUCTION**.......................………...................……………………1

II.   **OVERVIEW OF THE CASE**...........................……………………………2

III.   **ADMINISTRATION OF THE SETTLEMENT**....................................……2

   A.   *The Preliminary Approval Order*...........................................................2

   B.   *The Sending of Class Notice*................................................................3

   C.   *The Value of the Settlement*................................................................3

IV.   **THE COURT SHOULD GRANT FINAL APPROVAL
      TO THE SETTLEMENT**..........................................................................5

   A.   *The Class Meets All the Requirements of Fed. R. Civ. P. 23(a)*.........................5

      1.   Rule 23(a)(1) - The Settlement Class Is So Numerous That
           Joinder Of All members Is Impracticable..........................................5

      2.   Rule 23(a)(2) - The Claims Of The Settlement Class Arise
           From Common Questions Of Law And Fact................................................5

      3.   Rule 23(a)(3) - Plaintiff's Claims are Typical Of the Claims
           Of The Settlement Class...................................................................6

      4.   Rule 23(a)(4) - Plaintiff and Class Counsel Has Fairly And
           Adequately Protected The Interests Of The Settlement Class........................7

   B.   *The Class Meets All the Requirements of Fed. R. Civ. P. 23(b)(3)*....................8

      1.   Common Questions Predominate Over Individual Issues.............................8

      2.   A Class Action is Superior to Other Methods of
           Resolving This Matter......................................................................9

   C.   *The Court Should Grant Final Approval to the Agreement Because
      It Is Fair, Reasonable, and Adequate*............................................................10

      1.   The Complexity, Expense, and Likely Duration of Litigation/The
           Risks of Establishing Liability/The Risks of Establishing
           Damages/The Risks of Maintaining the Class Action Through Trial..........11

i

2.   The Stage of the Proceedings and Amount of Discovery Completed............11

3.   Defendant's Ability To Withstand A Greater Judgment/The
Range Of Reasonableness Of The Settlement Fund In Light
Of The Best Possible Recovery/The Range Of Reasonableness
Of The Settlement Fund To A Possible Recovery In Light
Of All The Attendant Risks Of Litigation......................................................12

D.   *The Settlement Was Not the Product of Fraud or Collusion*............................13

**V.   PLAINTIFF IS ENTITLED TO RECOVER HER
ATTORNEYS' FEES AND LITIGATION EXPENSES**......................................13

A.   *The FDCPA Requires Payment of Reasonable Attorneys'
Fees & Costs to Successful Plaintiffs*..................................................15

B.   *Plaintiff's Reasonable Attorney Fees, Costs, and Expenses are
Based Upon a Lodestar Calculation*................................................15

1.   The Hourly Rates Sought by Counsel are Reasonable in View
Of Their Experience, Preclusion of Other Employment, and
Contingency Nature of their Ability to Recovery Fees and
Costs, and the Highly Favorable Results Obtained......................................17

C.   *Under the Lodestar Standard, Class Counsel are Entitled to Full
Compensation for Their Work in This Litigation*............................................20

**VI.   CONCLUSION**.............................................................................20

# TABLE OF AUTHORITIES

**Cited Cases:**

*Amchem Products, Inc. v. Windsor,*
    521 U.S. 591 (1997)................................................................................8

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany,*
    493 F.3d 110 (2d Cir. 2007)..................................................15,16,19

*Baby Neal v. Casey,*
    43 F.3d 48 (3d Cir. 1994)........................................................................7

*Becher v. Long Island Lighting Co.,*
    164 F.R.D. 144 (E.D.N.Y. 1996).........................................................5

*Califano v. Yamasaki,*
    442 U.S. 682 (1979)……………………………………………………..……..9

*City of Detroit v. Grinnell Corp.,*
    495 F.2d 448 (2d Cir. 1974)..............................................................10,11

*Cruz v. Local Union No. 3 of the Intl Bd. of Elec. Workers,*
    34 F.3d 1148 (2d Cir. 1994)...............................................................15

*Beck v. Maximus,*
    457 F.3d 291 (3d Cir. 2006)...................................................................7

*Deposit Guaranty Nat'l Bank v. Roper,*
    445 U.S. 326 (1980)..............................................................................14

*Dura-Bilt Corp. v. Chase Manhattan Corp.,*
    89 F.R.D. 87 (S.D.N.Y.1981)...............................................................8

*Emanuel v. American Credit Exchange,*
    870 F.2d 805 (2d Cir. 1989)..............................................................13

*Finkel v. Omega Commc'n Servs., Inc.,*
    543 F. Supp. 2d 156 (E.D.N.Y. 2008)...............................................15

*Gaskill v. Gordon,*
    160 F.3d 361 (7th Cir. 1998)..............................................................14

*Genden v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,*
    114 F.R.D. 48 (S.D.N.Y.1987)...............................................................8

*General Tel. Co. v. Falcon*,
    102 S.Ct. 2364 (1982)................................................................................7

*Harrison v.  Great Springwaters*,
    1997 U.S. Dist. LEXIS 23267 (E.D.N.Y. 1997)................................................10

*Hensley v. Eckerhart*,
    461 U.S. 424 (1983)...............................................................................14,15

*In re Agent Orange Prod. Liab. Litig.*,
    818 F.2d 145 (2d Cir. 1987)…………………………….......................……………….…5

*In re Cont'l Ill. Sec. Litig.*,
    962 F.2d 566 (7th Cir. 1992)........................................................................14

*In re Global Crossing Securities and ERISA Litigation*,
    225 F.R.D. 436 (S.D.N.Y. 2004)....................................................................10

*In re Risk Mgmt. Alternatives, Inc.*,
    208 F.R.D. 493 (S.D.N.Y. 2002)....................................................................10

*Johnson v. Ga. Highway Express, Inc.*,
    488 F.2d 714 (5th Cir. 1974)................................................................ 14,15,16

*Irwin v. Mascott*,
    96 F. Supp. 2d 968 (N.D. Cal. 1999)..............................................................10

*Keele v. Wexler*,
    149 F.3d 589 (7th Cir. 1998)..........................................................................5

*Korn v. Franchard Corp.*,
    456 F.2d 1206 (2d Cir. 1972)……....................…………………………………….……5

*Kornburg v. Carnival Cruise Lines, Inc.*,
    741 F.2d 1332 (11th Cir. 1984).......................................................................6

*Labbate-D'Alauro v. GC Servs. Ltd. Partnership*,
    168 F.R.D. 451 (E.D.N.Y. 1996)....................................................................6,9

*Linney v. Cellular Alaska Partnership*,
    151 F.3d 1234 (9th Cir. 1998)........................................................................12

*Malchman v. Davis*,
    706 F.2d 426 (2d Cir. 1983).........................................................................10

*Macarz v. Transworld Systems, Inc.*,
    193 F.R.D. 46 (D. Conn. 2000)....................................................................6,8

*Mathis v. Bess*,
138 F.R.D. 390 (S.D.N.Y. 1991) ……..........................................…………………………5

*Pipiles v. Credit Bureau of Lockport*,
886 F.2d 22 (2d Cir. 1989)........................................................................13

*Robidoux v. Celani*,
987 F.2d 931 (2d Cir. 1993)........................................................................6

*Rodriguez v. Pressler & Pressler, L.L.P.*,
2009 U.S. Dist. LEXIS 20655 (E.D.N.Y. March 16, 2009)........................................18,19

*Rodriguez v. Pressler & Pressler, L.L.P.*,
2009 U.S. Dist. LEXIS 108059 (E.D.N.Y. Sept. 11, 2009)........................................18,19

*Savino v. Computer Credit*,
173 F.R.D. 346 (E.D.N.Y. 1997)........................................................................6

*Tolentino v. Friedman*,
46 F.3d 645 (7th Cir. 1995)........................................................................20

*Vagenos v. LDG Fin. Servs.*,
2011 U.S. Dist. LEXIS 76759 (E.D.N.Y. Jul. 20, 2010)........................................19

*Vega v. Credit Bureau Enters.*,
2005 U.S. Dist. LEXIS 4927 (E.D.N.Y. March 29, 2005)........................................10

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
396 F.3d 96 (2d Cir. 2005)........................................................................11

**Federal Statutes:**

Fed. R. Civ. P. 23(a)……….......…………….............………………………………………..2,5

Fed. R. Civ. P. 23(a)(1)…………………………….............…………………………………..5

Fed. R. Civ. P. 23(a)(2)…………………………….............…………………………………5,6

Fed. R. Civ. P. 23(a)(3)……………………………….............…………………………………6,7

Fed. R. Civ. P. 23(a)(4)……………………………….............…………………………...……7,8

Fed. R. Civ. P. 23(b)(3)………………………….............……………………………...2,8,9,10

Fed. R. Civ. P. 23(e)(1)(C)…….........…………….............……………………………………10

v

15 U.S.C. §§ 1692, *et seq*……………………….............……………………………….*passim*

15 U.S.C. § 1692k……………………….............………………………………........................4

15 U.S.C. § 1692k(a)(2)………………….............…………………………...............4,8,12

15 U.S.C. § 1692k(a)(3)………………….............………………………..............13,15

15 U.S.C. § 1692g……………….............…………………………..............................6

15 U.S.C. § 1692g(a)(2)………………….............…………………………...................17

## I.     <u>INTRODUCTION</u>

Plaintiff, SHIRLEY T. BURTON ("Plaintiff"), individually, and as representative of the class of persons defined herein ("Settlement Class"), by and through her undersigned counsel respectfully submits this Memorandum of Law in Support of Final Approval of the Class Settlement Agreement and Release ("Agreement"), which Plaintiff and Defendant, NATIONS RECOVERY CENTER, INC. ("Defendant"), entered into on August 29, 2013. This Court preliminarily approved the Agreement on September 12, 2013 [Doc. 20], and subsequently entered an Amended Preliminary Approval Order on December 6, 2013 [Doc. 25][1].

The Court is advised that on December 11, 2013, notice of the settlement of this action was mailed to 334 Settlement Class members by the Settlement Administrator, First Class, Inc. [Horn Affid, ¶ 9(a)]. As of the date of this filing, a total of 25 notices were returned by the United States Postal Service as undeliverable with no forwarding address or further information; there were also a total of 3 notices returned by the United States Postal Service with a new address, which were successfully re-mailed. [<u>Horn Decl.</u>, ¶¶ 9(b); 10].

In total, 309 Settlement Class members received notice of the settlement. No Settlement Class members objected to, or requested exclusion from, the settlement. [<u>Horn Decl.</u>, ¶¶ 9(d); 11; <u>Wexler Decl.</u>, ¶ 8].

A total of 23 Settlement Class members timely returned the proof of claim form. Thus, pursuant to the Agreement, ***each Settlement Class member will receive <u>$652.17</u>***, which represents their *pro rata* share of the monetary benefits under the Agreement. [<u>Horn Decl.</u>, ¶¶ 9(c)].

---

[1] The Court entered an Amended Preliminary Approval Order due to an error the Settlement Administrator made by initially mailing the class notice to the wrong addresses. [Doc. 24].

## II.     OVERVIEW OF THE CASE

Plaintiff's complaint alleges that Defendant engaged in false, deceptive, and misleading collection practices, and thereby violated the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692, *et seq.* ("FDCPA") by sending consumers collection letters, in the form attached as Exhibit A to Plaintiff's complaint, which failed to accurately identify the creditor of their alleged debts insofar as the letters stated: "Atlantic Credit & Finance Special Finance Unit III, LLC" above the words "Re: Capital One, N.A. Assignee from HSBC." [Doc. 1].

After engaging in extensive arms-length discussions, the Parties reached an agreement to settle the claims of Plaintiff and the Settlement Class, as set forth in the Agreement, on file with the Court. [Doc. 18-1]. As noted, *supra*, The Court preliminarily approved the Agreement on September 12, 2013 [Doc. 20]; however, due to an error by the Settlement Administrator, the Court subsequently entered an Amended Preliminary Approval Order on December 6, 2013 [Doc. 25]. In accordance with the Court's Amended Preliminary Approval Order, notice of the settlement of this action was mailed to 334 Settlement Class members on December 11, 2013. Likewise in accordance with the Court's Amended Preliminary Approval Order, Defendant served the notice required by the Class Action Fairness Act. [Docs. 22 & 27].

Consequently, as demonstrated below, the Agreement is now ripe for this Court's final approval.

## III.     ADMINISTRATION OF THE SETTLEMENT

### A.     *The Preliminary Approval Order*

In the Amended Preliminary Approval Order (the "Order"), the Court specifically found that the proposed terms of the settlement satisfied all of the elements of Federal Rule of Civil Procedure 23(a) and 23(b)(3). The Order preliminarily certified a class defined as:

> (i) all persons with addresses in the State of New York (ii) to whom Defendant mailed a collection letter in the form attached as *Exhibit A* to Plaintiff's complaint (iii) which states "Atlantic Credit & Finance Special Finance Unit III, LLC" above the words "Re: Capital One, N.A. Assignee from HSBC" (iv) made in connection with Defendant's attempt to collect a debt (v) during a period beginning on March 15, 2012, and ending on April 4, 2013.

[Doc. 25]. The Order established a procedural framework for the final approval of the settlement. The Order required the Parties to cause notice to be mailed to the members of the above defined Class, and further set deadlines and procedures for Class members to submit claim forms, request exclusion from the Class and/or to object to the settlement, and set a date and time for the fairness hearing.

### B.    The Sending of Class Notice

On December 11, 2013, First Class, Inc., the Settlement Administrator selected by the Parties, caused actual notice to be sent by first class mail to approximately 334 Settlement Class members. [Horn Decl., ¶ 9(a)]. A total of 25 notices were returned by the United States Postal Service as undeliverable with no forwarding address or further information; there were also a total of 3 notices returned by the United States Postal Service with a new address, which were successfully re-mailed. [Horn Decl., ¶ 9(b)].

In total, 309 Settlement Class members received notice of the settlement. [Horn Decl., ¶ 9(d)]. No Settlement Class Members objected to, or sought exclusion from, settlement. [Horn Decl., ¶¶ 9(d); 11; Wexler Decl., ¶8]. A total of 23 Settlement Class members timely returned the proof of claim form. [Horn Decl., ¶¶ 9(c)].

### C.    The Value of the Settlement

The Court previously considered the terms of the Agreement in entering the Order, which are as follows:

(a)     Settlement Class Recovery. Defendant will create a class settlement fund of $15,000.00 ("Class Recovery"), which Plaintiff's counsel will distribute *pro rata* among those Settlement Class Members who do not exclude themselves and who timely return a claim form ("Claimants"). Claimants will receive a *pro rata* share of the Class Recovery by check. Checks issued to Claimants will be void sixty (60) days from the date of issuance. If any portion of the Settlement Class Recovery remains after the void date on the Claimants' checks, these remaining funds will be distributed as set forth in ¶ 11(d). Relatives of deceased persons are eligible to submit a claim form and to receive a *pro rata* share of the Class Recovery. [Doc. 18-1, ¶¶ 10 and 11(a),(d)].

As noted *supra*, 23 Settlement Class Members timely returned the proof of claim form and, therefore, ***each will receive a check for $652.17***, which represents their *pro rata* share of the monetary benefits under the Agreement.

(b)     Relief to Plaintiff. Defendant shall pay $1,000.00 to Plaintiff for her statutory damages pursuant to 15 U.S.C. § 1692k(a)(2)(B)(i), plus an additional $1,500.00 in recognition for her services to the Settlement Class. [Doc. 18-1, ¶ 11(b)].

(c)     Attorneys' Fees and Costs. Defendant agreed that Plaintiff is the successful party and further agreed to pay reasonable attorneys' fees and costs as the Court may award for prosecution of a "successful action" under 15 U.S.C. § 1692k. [Doc. 18, ¶ 11(b), 12]. The Agreement further required the Parties to negotiate in good faith prior to the fairness hearing, including mediation, in an attempt to reach an agreement regarding Class Counsels' attorneys' fees, costs, and expenses, which will then be submitted for Court approval. [*Id.*]. After extensive negotiations over several weeks, which included 8 hours of mediation over several days, Defendant agreed to pay Class Counsel $37,500.00 for their attorneys' fees and costs incurred with respect to the Litigation. [Horn Decl., ¶12]. This payment of attorney's fees and costs is separate from, and in addition to, the foregoing damages Defendant agreed to pay Plaintiff and the Settlement Class.

(d)     The cost of administering the settlement, including providing notice to the Class, is also separate from, and in addition to, the foregoing damages Defendant has agreed to pay Plaintiff and the Settlement Class.

Of the 309 Settlement Class members who received notice, *none* have voiced any objection to, and *none* have sought exclusion from, the settlement. The lack of objections and requests for exclusion should be viewed by the Court as a significantly strong endorsement of the settlement by the Class.

## IV.    THE COURT SHOULD GRANT FINAL APPROVAL TO THE SETTLEMENT

The Court should grant final approval to the settlement. The Class meets all the requirements of Fed. R. Civ. P. 23 and the Agreement is fair and reasonable.

### A.    *The Class Meets All the Requirements of Fed. R. Civ. P. 23(a)*

#### 1.    Rule 23(a)(1) - The Settlement Class Is So Numerous That Joinder Of All Members Is Impracticable.

Fed. R. Civ. P. 23(a)(1) requires the class be "so numerous that joinder of all members is impracticable." The Second Circuit has recognized that as few as 70 class members is sufficient to satisfy the "numerosity" requirement of Rule 23(a)(1). *See Korn v. Franchard Corp.*, 456 F.2d 1206 (2d Cir. 1972) (70 class members sufficient); see also, *Mathis v. Bess*, 138 F.R.D. 390, 393 (S.D.N.Y. 1991) (joinder impracticable based solely on fact that class had 120 members); *see also*, Newberg on Class Actions, 3rd Ed. Sec. 3.05, at 3-25. Here, there were 334 individuals who met the Class definition each of whom were sent individual notice of the settlement via U.S. Mail, pursuant to the Order. The number of Class members in this case plainly satisfies the numerosity requirement of Rule 23(a)(1).

#### 2.    Rule 23(a)(2) - The Claims Of The Settlement Class Arise From Common Questions Of Law And Fact.

Fed. R. Civ. P. 23(a)(2) requires the existence of "questions of law or fact common to the class." The "commonality" requirement of Rule 23(a)(2) is usually satisfied where the class members' claims arise from a common nucleus of operative fact. *In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 145, 166-167 (2d Cir. 1987) (common defenses applicable to whole class satisfied commonality requirement). Not all factual or legal questions raised in the litigation need to be common so long as at least one issue is common to all class members and, therefore, courts typically find that the commonality requirement is easily satisfied. *Becher v. Long Island Lighting*

*Co.*, 164 F.R.D. 144, 150 (E.D.N.Y. 1996) "A sufficient nexus is established if the claims or defenses of the class and the class representatives arise from the same event or pattern or practice and are based on the same legal theory." *Kornburg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984). "Common nuclei of fact are typically manifest where, like in the case *sub judice*, the defendants have engaged in standardized conduct towards members of the proposed class by mailing to them allegedly illegal form letters or documents." *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998).

To establish commonality in an FDCPA case, it is sufficient that Plaintiff allege that all class members received the same type of uniform communication that allegedly violates the FDCPA. *Labbate-D'Alauro v. GC Servs. Ltd. Partnership*, 168 F.R.D. 451, 456 (E.D.N.Y. 1996); *Savino v. Computer Credit*, 173 F.R.D. 346, 352 (E.D.N.Y. 1997). "The very definition of this class logically involves common questions, such as whether the subject collection letter violates 15 U.S.C. §1692g." *Macarz v. Transworld Systems, Inc.*, 193 F.R.D. 46, 49 (D. Conn. 2000).

Here, the Settlement Class members share a common fact: Defendant mailed Plaintiff and each Settlement Class Member the same computer-generated, <u>standardized</u>, collection letter in connection with Defendant's attempt to collect a debt. Thus, Plaintiff and the Settlement Class Members share a common issue of law -- namely, whether Defendant's standardized collection letter violated the FDCPA. These common issues of fact and law satisfy Rule 23(a)(2).

### 3. Rule 23(a)(3) - Plaintiff's Claims are Typical Of the Claims Of The Settlement Class.

Fed. R. Civ. P. 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." The "typicality" requirement of Rule 23(a)(3) is satisfied for the reasons that the "commonality" requirement of Rule 23(a)(2) is met. *Keele v. Wexler*, 149 F.3d 589, 595 (7th Cir. 1998). See also, *Robidoux v. Celani*, 987 F.2d 931, 936-937

(2d Cir. 1993) (if same conduct is directed toward named plaintiff and putative class members, minor factual differences will not defeat typicality). The typicality prong is analyzed by asking whether the named plaintiff has incentives that align with those of absent class members to assure that the absentees' interests will be fairly represented. *Baby Neal v. Casey*, 43 F.3d 48, 57 (3d Cir. 1994), *citing* 3B Moore & Kennedy, P 23.06-02; 1 Newberg & Conte, § 3.13. *See also*, *Beck v. Maximus*, 457 F.3d 291, 295-96 (3d Cir. 2006).

Here, Plaintiff's claims share the same issues of fact and law as the Settlement Class members. Indeed, Defendant mailed Plaintiff and each Settlement Class Member the same computer-generated, standardized, collection letter in connection with Defendant's attempt to collect a debt. Thus, Plaintiff and the Settlement Class Members share a common issue of fact and law -- namely, whether Defendant's standardized collection letter violated the FDCPA. Accordingly, Rule 23(a)(3) is plainly satisfied.

### 4.      Rule 23(a)(4) - Plaintiff and Class Counsel Have Fairly And Adequately Protected The Interests Of The Settlement Class.

Fed. R. Civ. P. Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interest of the class." This rule involves two considerations: (1) whether the Plaintiff's attorneys are properly qualified and experienced to conduct the litigation; and (2) whether the Plaintiff has any interests antagonistic to the class. *General Tel. Co. v. Falcon*, 102 S.Ct. 2364, 2370, n.13 (1982). Respectively attached hereto are the affidavits of Class Counsel, William F. Horn and Shimshon Wexler, which sets forth their experience in cases involving complex issues and class action litigation. Additionally, Plaintiff has no interests, which are antagonistic to the Settlement Class Members as evidenced by the fact that she has seen this Litigation through to its conclusion on behalf of the Settlement Class Members. Moreover, it is important to note that Plaintiff and Class Counsel negotiated a class settlement that recovered

substantially more than the class damages (the lesser of $500,000 or 1% of the defendant's net worth) set forth by the FDCPA, *see*. 15 U.S.C. § 1692k(a)(2)(B). Here, had Plaintiff recovered only the 1% of Defendant's net worth the Class would have been eligible to share in an award of $2,064. Instead, Plaintiff recovered more than 7 times that amount.

In view of the foregoing, Plaintiff and her counsel satisfy the adequacy of representation requirement of Rule 23(a)(4).

### B.      *The Class Meets All The Requirements of Fed. R. Civ. P. 23(b)(3)*

Class certification is appropriate under Fed. R. Civ. P. 23(b)(3) if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." For the reasons set forth below, both of these requirements are satisfied in the present case.

### 1.      **Common questions predominate over individual issues.**

In determining whether common questions of fact predominate, a court's inquiry is directed primarily toward whether the issue of liability is common to members of the class. *Macarz v. Transworld Sys.*, 193 F.R.D. at 54. Indeed, "when determining whether common questions predominate courts focus on the liability issue … and if the liability issue is common to the class, common questions are held to predominate over individual questions." *Id.* quoting *Genden v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 114 F.R.D. 48, 52 (S.D.N.Y.1987) (quoting *Dura-Bilt Corp. v. Chase Manhattan Corp.*, 89 F.R.D. 87, 93 (S.D.N.Y.1981)). The U.S. Supreme Court stated that "predominance is a test readily met in certain cases alleging consumer...fraud..." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623-24 (1997).

Here, a common issue of fact – i.e., an identical, computer-generated, collection letter mailed by Defendant to Plaintiff and the Settlement Class Members – predominates over any individual issues relating to Class members. Likewise, a common issue of law – i.e., whether Defendant's letters violated the FDCPA – predominates over any individual issues relating to each Settlement Class Member. Thus, Rule 23's predominance requirement is satisfied.

### 2. A Class Action is Superior to Other Methods of Resolving This Matter.

In addition to the predomination of common questions of law or fact, a class action must also be the superior method to resolve the controversy to satisfy fully the requirements of Rule 23(b)(3). *Labbate-D'Alauro v. GC Servs. Ltd. Pshp.*, 168 F.R.D. at 458. Class actions are the superior method for resolving controversies when the main objectives of Rule 23 are served; namely, the efficient resolution of the claims or liabilities of many individuals in a single action, as well as the elimination of repetitious litigation and possibly inconsistent adjudications. *Califano v. Yamasaki*, 442 U.S. 682, 700-01 (1979); *Labbate-D'Alauro v. GC Servs. Ltd. Pshp.*, *supra*. The Court is required to determine the best available method for resolving the controversy in keeping with judicial integrity, convenience, and economy. *Labbate-D'Alauro, supra* (internal citation and quotes omitted).

It is appropriate for the court to consider the "inability of the poor or uninformed to enforce their rights and the improbability that large numbers of class members would possess the initiative to litigate individually." *Id.* Class actions are often the most suitable method for resolving suits to enforce compliance with consumer protection laws because the awards in an individual case are usually too small to encourage the lone consumer to file suit. *Id.* Indeed, *See Id.* (FDCPA cases regarding the liability of standardized documents and practices often result in the predomination of common questions of law or fact and were generally appropriate for resolution by class action);

-9-

*see also*, *Irwin v. Mascott*, 96 F. Supp. 2d 968 (N.D. Cal. 1999); *In re Risk Mgmt. Alternatives, Inc.*, 208 F.R.D. 493, 507 (S.D.N.Y. 2002); *Vega v. Credit Bureau Enters.*, 2005 U.S. Dist. LEXIS 4927, *15 (E.D.N.Y. March 29, 2005); *Harrison v. Great Springwaters*, 1997 U.S. Dist. LEXIS 23267 (E.D.N.Y. 1997).

Here, given the large number of individual lawsuits that would be required if a class were not certified, a class action presents a superior method to fairly and efficiently adjudicate all of the claims of the Settlement Class in this case, within the meaning of Rule 23(b)(3). To the extent any Settlement Class members wished to pursue any such individual claim, they were free to exclude themselves from the Settlement Class under Rule 23(b)(3). Notably, not a single Settlement Class Member elected to opt-out of the Settlement Class. Nor did any Settlement Class Member voice an objection to the settlement.

In light of the foregoing, Plaintiff has met the superiority element of Rule 23(b)(3).

**C.      The Court Should Grant Final Approval to the Agreement Because It Is Fair, Reasonable, and Adequate**

"The settlement of a class action requires court approval." *In re Global Crossing Securities and ERISA Litigation*, 225 F.R.D. 436, 455 (S.D.N.Y. 2004). "If the [proposed settlement] would bind class members, the court may approve it only after a hearing and finding it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(1)(C). "As a general policy matter, federal courts favor settlement, especially in complex and large-scale disputes, so as to encourage compromise and conserve judicial and private resources." *In re Global Crossing*, 225 F.R.D. at 455.

In evaluating a settlement, the court must consider the "substantive terms of the settlement compared to the likely result of a trial." *Malchman v. Davis*, 706 F.2d 426, 433 (2d Cir. 1983). Furthermore, in the Second Circuit, courts must "examine the fairness, adequacy, and reasonableness of a class settlement according to the *Grinnell* factors, which are:   (1) the

complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 117 (2d Cir. 2005) (quoting *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 454 (2d Cir. 1974)). Application of these factors confirms that the Court should approve the Agreement in this case.

### 1. *The Complexity, Expense, and Likely Duration of Litigation/The Risks of Establishing Liability/The Risks of Establishing Damages/The Risks of Maintaining the Class Action Through Trial.*

The likelihood of success for the class members if they proceeded to trial is uncertain. The class claims and defenses involve complex legal issues and Defendant has raised several defenses to the class claims, which Defendant avers would ultimately defeat the claims of the putative class. Settlement eliminates any further risk and expense for the Parties. Considering the potential risks and expenses associated with continued prosecution of the case, the probability of appeals, the certainty of delay, and the ultimate uncertainty of recovery through continued litigation, the proposed settlement is fair, reasonable, and adequate.

### 2. *The Stage of the Proceedings and Amount of Discovery Completed.*

Considering the disputed issues between the Parties are legal, *not* factual, in nature, and that the Parties have exchanged significant information and documents concerning Plaintiff's allegations, Defendant's defenses, and potential damages, the Parties have exchanged sufficient

information to make an informed decision about settlement. *See, Linney v. Cellular Alaska Partnership*, 151 F.3d 1234, 1239 (9th Cir. 1998).

 **3.** ***Defendant's Ability To Withstand A Greater Judgment/The Range Of Reasonableness Of The Settlement Fund In Light Of The Best Possible Recovery/The Range Of Reasonableness Of The Settlement Fund To A Possible Recovery In Light Of All The Attendant Risks Of Litigation.***

The FDCPA limits class damages to the lesser of $500,000 or 1% of the defendant's net worth. 15 U.S.C. § 1692k(a)(2)(B). Here, Defendant's class liability was capped at $2,064.34; however, Plaintiff was able to negotiate a class damage award of $15,000.00, which represents *more than 727% of the maximum allowable class relief available*. *See* 15 U.S.C. § 1692k(a)(2)(B)(ii). Similarly, Plaintiff received $2,500.00, *which represents 250% of the maximum allowable class relief available*. *See* 15 U.S.C. § 1692k(a)(2)(B)(i).

A trial in this case would be expensive and lengthy and continued litigation could have possibly depleted Defendant's resources to pay any judgment or possible future settlement making early settlement even more valuable to the proposed class members. As such, considering the uncertainties of trial and the possible difficulty in ultimately proving liability against Defendant, the proposed settlement is clearly fair, reasonable, and adequate – *particularly in view of the fact that Plaintiff recovered 727% of the maximum available class damages and 250% of the maximum available individual damages*.

The settlement was negotiated at arm's length by experienced and capable Class Counsel and Defendant's counsel all of whom recommend its approval. As proven by the Class Counsel's affidavits attached hereto, Class Counsel are experienced consumer class action lawyers and well qualified to assess the prospects of their case and to negotiate a favorable resolution for the Settlement Class. [Horn Decl., ¶¶ 2-8, 15; Wexler Decl., ¶¶ 1-7].

**D.    *The Settlement Was Not The Product Of Fraud Or Collusion*.**

The Parties extensively negotiated the proposed Settlement at arm's-length over the course of several months. Plaintiff did not use the class action procedure to gain a more beneficial settlement for herself. This fact is established by virtue of Plaintiff's successful efforts to secure damages on behalf of the Settlement Class that was *727% of the maximum* statutorily available damages, and which further resulted in *payments of $652.17 to each Settlement Class who returned a claim form* (or more than 65% of their maximum individual damages had they filed their own lawsuit). Accordingly, Plaintiff's $2,500.00 payment is more than justified by the settlement of her class and individual claims and by her demonstrated willingness to serve as the Class Representative.

## V.    PLAINTIFF IS ENTITLED TO RECOVER HER ATTORNEYS' FEES AND LITIGATION EXPENSES

**A.    *The FDCPA Requires Payment of Reasonable Attorneys' Fees & Costs to Successful Plaintiffs***

Under the FDCPA, the prevailing plaintiff is entitled to "a reasonable attorney's fee as determined by the court."

> [A]ny debt collector who fails to comply with any provision of this title...is liable to such person in an amount equal to the sum of ...actual damages, ... [statutory damages], ... and in the case of any successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorney's fee as determined by the court.

15 U.S.C. § 1692k(a)(3). Likewise, the Second Circuit holds that the FDCPA "mandates an award of attorney's fees…" *Pipiles v. Credit Bureau of Lockport*, 886 F.2d 22, 28 (2d Cir. 1989); *Emanuel v. American Credit Exchange*, 870 F.2d 805, 809 (2d Cir. 1989). "Given the structure of the section, attorney's fees should not be construed as a special or discretionary remedy; rather,

the…[FDCPA] mandates an award of attorney's fees as a means of fulfilling Congress's intent that the [FDCPA] should be enforced by debtors acting as private attorneys general." *Id.*

The United States Supreme Court has encouraged a consensual resolution of attorney's fees as the ideal toward which litigants should strive. In *Hensley v. Eckerhart*, 461 U.S. 424 (1983), the United States Supreme Court said: "A request for attorney's fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of a fee." *Id.* at 437. *Accord In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 568-70 (7th Cir. 1992) (market factors, best known by the negotiating parties themselves, should determine the quantum of attorneys' fees). It is widely recognized that fee agreements between plaintiffs and defendants are urged. *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 720 (5th Cir. 1974) ("In cases of this kind, we encourage counsel on both sides to utilize their best efforts to understandingly, sympathetically, and professionally arrive at a settlement as to attorney's fees.").

Given the reliance of our legal system on private litigants to enforce substantive provisions of law through class actions, attorneys providing the essential enforcement services must be provided incentives comparable to those negotiated in the private bargaining that takes place in the legal marketplace, as it would otherwise be economical for defendants to practice injurious behavior. *See, Deposit Guaranty Nat'l Bank v. Roper*, 445 U.S. 326 (1980). It has therefore been urged (most persistently by Judge Richard Posner of the Seventh Circuit) that in defining a "reasonable fee" in such representative actions, the law should "mimic the market." *See e.g., Gaskill v. Gordon*, 160 F.3d 361, 363 (7th Cir. 1998).

Here, the Parties avoided the possibility of a "second major litigation" by extensively negotiating an agreement with respect Class Counsel's attorney's fees to be awarded, which included more than 8 hours of mediation over several days. Thus, the Court need not guess what

-14-

are the "market factors" as the Parties, through able and experienced counsel, have done on their

own through their extensive and protracted negotiations.

**B.      Plaintiff's Reasonable Attorney Fees, Costs, and Expenses are Based Upon a Lodestar Calculation**

The FDCPA requires a debt collector to pay the costs and reasonable attorney's fees of a

successful consumer litigant.  Any debt collector who fails to comply with any provision of 15

USCS §§ 1692, *et seq.* with respect to any person is liable to such person in an amount equal to

the sum of --

> in the case of any successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorney's fee as determined by the court.

15 U.S.C. §1692k(a)(3). The U.S. Supreme Court has established a guideline for determining the

amount of a reasonable fee:

> The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. The calculation provides an objective basis on which to make an initial estimate of the value of a lawyer's services.

*Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). In the Second Circuit, attorney's fees are

determined by calculating the "presumptively reasonable fee". *Arbor Hill Concerned Citizens*

*Neighborhood Ass'n v. County of Albany*, 493 F.3d 110, 117-18 (2d Cir. 2007), amended on other

grounds, 522 F.3d 182 (2d Cir. 2008). The "presumptively reasonable fee" is "comprised of a

reasonable hourly rate multiplied by a reasonable number of expended hours". *Finkel v. Omega*

*Commc'n Servs.*, Inc., 543 F. Supp. 2d 156, 164 (E.D.N.Y. 2008) (citing Arbor Hill 522 F.3d at

189); *see also, Cruz v. Local Union No. 3 of the Intl Bd. of Elec. Workers*, 34 F.3d 1148, 1159 (2d

Cir. 1994). In assessing the presumptively reasonable fee, the Second Circuit has instructed that

courts should consider -- but not apply in any mechanical way -- the factors articulated in *Johnson*

-15-

*v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974). *See Arbor Hill*, 522 F.3d at 190. As summarized by the Second Circuit, the *Johnson* factors relevant to a court's consideration are:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Id*. at 186 n.3 (citing *Johnson*, 488 F.2d at 717-19).

Here, the Court does not need to speculate what the market price would be or what fee might have been negotiated by Plaintiff and members of the class. Consistent with the foregoing precedents, and the Agreement, the Parties negotiated the amount of attorney's fees Defendant would pay Class Counsel for their work on behalf of Plaintiff and the Settlement Class; Defendants' agreed to pay $37,500.00. [Horn Decl., ¶12]. As set forth in Class Counsels' affidavits, the Parties' negotiated fees are far below the actual lodestar amounts. [Horn Decl., ¶¶ 12-16; Wexler Decl., ¶10]. The result is an amount that reflects a negotiated compromise reached through extensive arm's-length bargaining by experienced counsel and informed parties. Indeed, it was only after the Parties had negotiated the other terms and provisions of the Agreement that they addressed the issue of attorney's fees.

Importantly, the negotiated attorney's fees payable by Defendant does not reduce the amount of the Class Settlement fund or damages awarded to Plaintiff. Nor does the negotiated attorney's fees reduce the benefits to the class in any way. Moreover, Defendant is represented by

skilled lawyers and does not need (and has not sought) the Court's protection from the results of its own negotiations regarding the amount of the fees it has agreed to pay Class Counsel.

> **1.      *The Hourly Rates Sought by Counsel are Reasonable in View of Their Experience, Preclusion of Other Employment, and Contingency Nature of their Ability to Recovery Fees and Costs, and the Highly Favorable Results Obtained***

As an initial matter, Class Counsel succeeded in enforcing liability on 100% of the individual and class claims alleged in Plaintiff's class action complaint (i.e., only a single FDCPA claim alleged for violation of §1692g(a)(2)). [Doc. 1, ¶23]. Moreover, Class Counsel skillfully negotiated a class settlement that resulted in an award of class and individual damages well in excess of what was sought by Plaintiff's class action complaint (only FDCPA statutory damages alleged). [Doc. 1, ¶23]. Indeed, as a direct result of Class Counsels' skill and tenacity the Settlement Class received ***727% of the maximum available class damages and Plaintiff receiving 250% of the maximum available individual damages***; additionally, each Settlement Class Member who returned a claim form ***will receive a check for $652.17***, which is a result rarely seen in FDCPA class action cases.

Here, Class Counsel, William F. Horn, seeks an hourly rate of $450.00 for himself, and $175.00 for Andrew T. Thomasson Esq., who was Mr. Law Horn's law clerk during the first half of this case, but during the second half of the case has been a licensed attorney and *Of Counsel* to Mr. Horn's law firm. Class Counsel, Shimshon Wexler, seeks an hourly rate of $300.00.

Mr. Horn has been admitted to practice law for 19 years and in that time has worked at some of the largest and well-respected law firms in New York, and prior to that he was employed as a business analyst and international banker. Since 2009, Mr. Horn has been engaged as a solo practitioner and has a growing practice representing consumers on class action claims under the

-17-

FDCPA. Since 2009, Mr. Horn has successfully certified 20 class action lawsuits involving FDCPA claims.

Mr. Thomasson has worked for Mr. Horn since 2009 and, in that capacity, has worked on a variety of complex consumer class action cases including, but not limited to, all aspects of this case, the class litigation set forth in Paragraph 8 of Mr. Horn's Declaration, and many other cases in which Mr. Horn has been involved as counsel. In October 2013, Mr. Thomasson became licensed to practice law in New Jersey and since then has successfully certified 3 class action lawsuits involving FDCPA claims.

Here, Class Counsel, Shimshon Wexler, seeks an hourly rate of $300.00 for himself. Mr. Wexler has been practicing law for over 4 years. During that time, Mr. Wexler has litigated many consumer cases in both the Federal Courts and the New York State courts and has been certified as sole class counsel in two consumer actions brought in the Federal Courts.

In the interest of brevity, Plaintiff cites two relevant decisions from this Court that directly support their requested hourly rates and fee award.

First, in *Rodriguez v. Pressler & Pressler, L.L.P.*, which was not a class action lawsuit, the plaintiffs accepted a Rule 68 Offer of Judgment for $2,000.00 each for their FDCPA statutory damages (i.e., twice the maximum), but in doing so they abandoned all their claims for actual damages they claimed to have suffered by defendants' many violations of the Act, secured no relief whatsoever on their claims under New York state law, and abandoned all of their claims for declaratory and injunctive relief. 2009 U.S. Dist. LEXIS 20655 (E.D.N.Y. March 16, 2009). The District Court, however, in overruling the Magistrate's report and recommendation ruled that an attorney with similar experience to Messrs. Horn and Wexler were respectively entitled to $450.00 and $300.00 per hour. *Rodriguez v. Pressler & Pressler, L.L.P.*, 2009 U.S. Dist. LEXIS 108059,

*1 (E.D.N.Y. Sept. 11, 2009). In its ruling 5 years ago, the District Court in *Rodriguez* specifically

cited the Second Circuit's decision in *Arbor Hill, supra*, and held:

> I am convinced that a paying client would be willing to pay hourly rates of $450 and $300 for the services that [an attorney with 17 years of experience] and [an attorney with 6 years of experience] have rendered here....I find that counsels' requested rates are within the reasonable range for FDCPA cases in this district."
>
> ***
>
> By achieving the maximum possible monetary relief available under the statute, plaintiffs' counsel succeeded in their efforts. Indeed, the settlement reflected the rejection of a viable legal defense that could have limited their recovery to half of what they received.

Second, in *Vagenos v. LDG Fin. Servs.,* this Court awarded found an hourly rate of $250.00

reasonable in an *individual* FDCPA case where the attorney had 5 years of FDCPA experience.

2011 U.S. Dist. LEXIS 76759 (E.D.N.Y. Jul. 20, 2010)), adopting report and recommendation

2011 U.S. Dist. LEXIS 76665, (E.D.N.Y. Jul 15, 2011). In its ruling, the Court in *Vagenos* held

"it is worth mentioning that this was not a very complicated FDCPA case." *Id.*

Finally, it should be noted that Messrs. Horn and Wexler work on a contingency basis

under the fee shifting provisions of the FDCPA, which is a risk that cannot be spread over a large

portfolio of cases. [Horn Decl., ¶¶ 18-19; Wexler Decl., ¶10]. Class Counsel made a substantial,

long-term commitment to this case, and they should be well compensated for their dedication and

success on behalf of Plaintiff and Settlement Class. The demands of the case precluded Class

Counsel from taking on other matters during certain periods of heavy work.

Consequently, Plaintiff respectfully submits that the Court should approve their requested

hourly rates and the fees and costs sought in this motion, in view of the experience set forth in

Class Counsels' accompanying affidavits, the contingency nature of recovering fees and costs,

preclusion of other employment, and most importantly the exceedingly superior results achieved

on behalf of the Plaintiff and Settlement Class (i.e., 100% success on all claims alleged, 727% of the maximum statutorily available amount of class damages, 250% of the maximum statutorily available amount of individual damages, and each class member who returned a claim form receiving $652.17).

### C.   Under the Lodestar Standard, Class Counsel are Entitled to Full Compensation for Their Work in This Litigation

"In order to encourage able counsel to undertake FDCPA cases, as Congress intended, it is necessary that counsel be awarded fees commensurate with those which they could obtain by taking other types of cases....Paying counsel in FDCPA cases at rates lower than those they can obtain in the marketplace is inconsistent with the congressional desire to enforce the FDCPA through private actions, and therefore misapplies the law." *Tolentino v. Friedman*, 46 F.3d 645, 652-653 (7th Cir. 1995).

## VI.   CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests the Court grant her motion and enter the attached Final Approval Order including an award of Class Counsels' fees and costs.

Respectfully submitted this 11th Day of February, 2014.

| | |
|---|---|
| s/ Arthur Sanders | s/ William F. Horn |
| Arthur Sanders, Esq. (AS-1210) | William F. Horn, Esq. (WH-1070) |
| MEL S. HARRIS & ASSOCIATES, LLC | LAW OFFICE OF WILLIAM F. HORN |
| 5 Hanover Square, 8th Floor | 188-01B 71st Crescent |
| New York, N.Y. 10004 | Fresh Meadows, NY 11365 |
| Telephone: (212) 660-1050 | Telephone: (718) 785-0543 |
| Facsimile: (646) 454-2104 | Facsimile:  (866) 596-9003 |
| E-Mail: asanders@melharrislaw.com | E-Mail: bill@wfhlegal.com |
| | |
| *Attorney for Defendant, Nations Recovery Center, Inc.* | *One of the Attorneys for Plaintiff, Shirley Burton, and all others similarly situated* |